is Nguyen v. Frauenheim. So, counsel, please approach the bench and proceed. Thank you, Your Honor. Good morning. Good morning, Your Honors, and may it please the Court. Raj Shah for Petitioner Appellant Xiang Nguyen. I'd like to reserve three minutes for rebuttal, and I will keep an eye on the clock. Good. Thank you. Your Honors, this is a non-capital habeas matter that ultimately turns on Step 1 of the Supreme Court's decision in Batson v. Kentucky. In this case, the State Appellate Court denied Mr. Nguyen's Batson claim at Step 1, based entirely on speculation, engaging in the exact legal error that this Court identified in multiple decisions over the past two decades, including Johnson v. Finn in 2011, Shirley v. Yates in 2015, and William v. Runnels in 2006. So, counsel, are you suggesting that, hypothetically, an arguendo, assume we're reviewing de novo, and that we can't merge, if you will, gender and race because of Teague? You're focusing on the first prong of Batson, and do I understand you to be arguing that we, as an appellate panel, are not in a position to view the evidence that was considered by the trial court about the nature of these three women that were excluded? Is that what you're saying? Not exactly, Your Honor. I was arguing that the State Court decision itself was contrary to Batson v. Kentucky, as this Court recognized in Shirley, in Williams, and in Johnson. But if this Court ultimately is inclined to conclude that epidefference is satisfied and that this Court can review the question de novo, I would submit that the evidence before this Court about statistical disparity resolves the issue at Step 1, and this Court doesn't need to look at the particular characteristics of the three women in this case. I'm really puzzled by that because, I mean, the reality is it's your burden, right? That's correct. And I'd step one to show that, if you will, there's a prima facie case of discrimination based on a prohibited basis. Is that right? That's correct, Your Honor. So here you have three Hispanic women, two of whom have either family members or some connection to people who were in gangs. You have a woman who was relatively young, and perhaps he was disrespectful of her, but he was concerned that she might be influenced. It didn't seem to be that what he was asking was at all out of bounds given the nature of the case. What am I missing? Well, Your Honor, I think the problem is that at Step 1 of the Batson analysis, just for starters, we're supposed to put a very low burden on the petitioner to state a prima facie case. But there is a burden. It's low, but it's a burden. There is a burden, but the Supreme Court has instructed that when we're assessing whether a petitioner has met that burden, we're not supposed to speculate on possible reasons the prosecutor might have had for excusing the jurors at issue. And I'm quoting from the Supreme Court's decision in Johnson v. California, it does not matter that the prosecutor might have had good reasons for the strikes that he exercised. What matters is the real reason that they were stricken. And you can find that on page 172 of the Johnson opinion. The Supreme Court has given us similar instructions in Miller L. v. Dredge, which was decided the same day, where the court held that a Batson challenge does not call for a mere exercise in thinking up any rational basis for prosecutor strikes. So we know from these decisions, clearly established Supreme Court precedent, that we're not supposed to fabricate or concoct rationales for why the prosecutor exercised the strikes that he did. We're simply supposed to look at whether there is an inference of discrimination. And this court has held in William v. Respectfully, how does someone determine that? Well, Your Honor, in William v. Runnels, the court decided precisely this question. And this court made it very clear that a statistical disparity in the prosecutor's exercise of strikes by itself is sufficient to raise an inference of discrimination. And that's exactly what we have in this case, Your Honor. The prosecutor used six of his 13 peremptory strikes against Hispanic members of the jury veneer. And he struck 50 percent of the Hispanic women in the jury veneer. Further, on top of that, he struck six out of the 16 Hispanic jurors who were in the veneer altogether. That's almost a rate of 40 percent. Is this a disparate analysis? Is that disparate effect analysis for undertaking? Well, I don't think the Supreme Court has ever actually labeled it that. But this court's decisions do establish that statistics of that nature are sufficient to raise an inference of discrimination. So how is that consistent with where we've said in Boyd, you know, there's a three-part test just for step one? And we've said in that that we look at the totality of the circumstances to see if there's an inference. It sounds like what you're saying is, well, we just look only at statistics. We don't look at whether or not there might be understandable reasons for the person. I would feel like that would be part of the totality. Your Honor is absolutely right. This court has indicated that there are two steps to the first step analysis. The first step is looking at whether there is an inference of discrimination based on statistical disparity. And the second step is looking at doing a comparative juror analysis, as Your Honor mentioned was the case in Boyd v. Newland. But that sort of comparative juror analysis is simply supposed to look at whether the prosecutor questioned different jurors differently. But in this case, that sort of analysis is not sufficient to refute the inference of discrimination. I'm actually getting at something else, which is the first step of the two steps you're talking about, the inference. In determining whether there's an inference, it sounds like you kind of are saying we should sort of only look at statistics but not look at anything else. But I don't know how that's consistent with the instruction that we are supposed to look at the totality of the circumstances in determining whether there's an inference and not turn a blind eye to, for instance, I think as Judge Smith said, that two of the three had, you know, family members that were gang members. I apologize for that misunderstanding, Your Honor. What I was saying was that at the first step of the first step, as it were, we can look at statistics to see whether there is an inference of discrimination. But once we show that inference, then the court can look at the totality of the circumstances. Your Honor did mention the details of the jurors in question that they had family members that were gang members. But I would submit, Your Honor, that the court in Johnson and in Miller L. instructed that while we can consider the totality of the circumstances, we can't fabricate reasons why the prosecutor might have exercised the strikes that he did. So while we can compare – So it sounds like – I mean, so I think as I'm understanding your position, it's that you can look at statistics and you can look at any – what you might call negative reasons, racial reasons or gender-based reasons or something like that. But you can't – in looking at the totality of the circumstances, you can't look at what would be positive reason, you know, permissible reasons. But that doesn't seem like it's really looking at the totality of circumstances. It's more like a totality of circumstances only taking the negative things into effect. Well, that is what the Supreme Court has said, Your Honor. And if you look at all of this court's precedent on Batson's Step 1 over the past 20 years, this court has never held – has never looked to comparative juror analysis or the totality of the circumstances to find some sort of reason justifying the prosecutor's strikes. The only reason this court has ever looked to the totality of the circumstances is to assess whether there is additional evidence supporting a claim of racial or other discrimination in this case. So I think as Your Honor stated – Well, let me rephrase that, counsel. Again, it's whether I'm understanding you correctly, but it seems to me that you're basically writing Step 1 of Batson out of existence. All you have to do is say, hey, he discriminated. That's it. You can't do it anymore. You can't look at it. That's not my understanding of Batson, either the Supreme Court's case or our cases that follow. Aren't you pushing that Step 1 a little too far? I don't believe I am, Your Honor, and the reason I say that is because although Batson imposes a small burden on the petitioner, it is still a burden. We still have to demonstrate a statistical disparity, and the sort of statistical disparity that this court has recognized in its decisions over the past 20 years have entailed strikes of 50, 40, 50, 60 percent of the jurors of a particular – Just to be clear, I know you want to save some time, but I think you can answer this real quick. So just to be clear, it sounds like your position is that, yes, there's this prima facie case, and we have the burden, but that burden is pretty much automatically met if you have a case like this where they've stricken enough of a certain category of jurors because then you'd say statistically it's been shown. So is that your position, that you have a prima facie case burden, but that burden is kind of automatically met in a case like this? Well, and you don't have to take my word for it, Your Honor. That's what – that's exactly what this court held in Williams v. Runnels, where this court held, quote – well, not quote, but effectively held that a statistical disparity is ordinarily sufficient to establish a petitioner's limited burden at step one. That is exactly what the court in Williams v. Runnels said, and that is indeed our burden at step one of the analysis. So not always, but ordinarily? Exactly. All right. Exactly, Your Honor. So when you're dealing with fairly small numbers, when does it become significant, for example, that the state trial judge said there were 14 potential Hispanic female jurors and you count 16? Does that make a difference if there were two fewer and the state court was correct? No, Your Honor. It doesn't make a difference, and I take it by reference to small numbers, Your Honor, as referencing this court's decision in Wade v. Terhune, where the court held that the numbers in that case were too small to make the statistics in that case mean anything. But I would note for the court that in Wade, this court was dealing with a strike of just one minority juror out of three parenthal strikes in that case, Your Honor, and that's not the situation we have today in this case. In this case, the prosecutor exercised 13 strikes, six of which were against Hispanic jurors, and we also know that the first three of the prosecutor's parenthal strikes out of five were against Hispanic women in particular. So I don't think that the numbers are too small in this case, especially when you look at the facts of Wade v. Terhune. Do you agree that Teague barred you from blending the gender and race issues in this case? I would disagree with that, Your Honor, on multiple grounds. I see that I'm running out of time. We'll give you a little rebuttal time. Why don't you think about that and come back for a rebuttal, and you can respond to our question at that point if that works for you. Certainly. Thank you, Your Honor. Okay. All right. So we have the government appearing by video. Please proceed. Yes. Good morning, Your Honors. Deputy Attorney General Jennifer Jadavitz for respondent. At this point, appellant is asking this court to do what it has twice stated that it cannot, and that is to recognize a mixed gender group as a protected class under Batson. That alone is dispositive of this claim. Nonetheless, even considering this case in the context of the dismissal of prospective Hispanic jurors, the totality of the circumstances supports the district court's conclusion that the court of appeals denial of this Batson claim was reasonable. Counsel, what about opposing counsel's comment, if I understood him correctly, that at step one it really doesn't matter what the prosecutor's motives were, as long as there is an adequate statistical showing of a racial disparity in this case, that even though you can look at the totality of the circumstances, that that's really the end of the story, to low burden. What's your response to that? We would disagree with that position, Your Honor. It is a totality of the circumstances, and that's just one factor, and you can't ignore all the other factors that are involved in a case like this, and especially with such low numbers at step one, at the time that the Batson and Wheeler motion was made in this particular case, which in void this court said, we look at what the information was at the time that the motion was made. So for purposes of analyzing the totality of the circumstances, can we look at each one of the potential jurors that was stricken, look at the connection to gangs, et cetera, et cetera, at step one? Can we do that in terms of our totality of the circumstances analysis? Absolutely, Your Honor, as the Court of Appeal did and the District Court did, and as a matter of fact, I think that's how you must look at the record that way. It's not a fabrication to look at what's on the record to determine, you know, why the defense counsel has not meditated the inference. Very well. Please proceed. I'm sorry. At this point, Your Honor, absent the court having any more questions, Respondent would be happy to submit on the briefs. May I ask my colleagues, does anyone have any additional questions? Do you need to take a break? I'm okay. Hopefully I'm going to stop coughing. All right. It wasn't anything she said, was it? No. Apologies if so, Your Honor. I didn't think so. No, I apologize for my little coughing attack. All right. Very well. Thank you very much. Thank you, Your Honor. So we'll now hear rebuttal from Mr. All right. Thank you, Your Honor. Do you have a cough drop by chance? Do you have a cough drop or something like that? I have a cough drop, actually, Your Honor, if that's permissible. Oh, excellent. That would be wonderful. Thank you. That would be great. Oh, here's one. Thank you very much. She's got a mint. We're good. Thank you so much. Something will work. Thank you. There you go. You always got to be prepared, right? This is an all-service court. Yes, thank you. All right. You were going to answer another question before, but since we've just talked about this, your opponent has said that in connection with analyzing the totality of the circumstances per void, that not only can we, but we must consider why the juror was stricken by the prosecution. Would you respond to that? Certainly, and I would say that is an incorrect statement of the law, Your Honor. This court has repeatedly held that we're not supposed to speculate on why a prosecutor exercised the strikes that he did. This court said so explicitly in Williams, in Johnson, and in Shirley. And in fact, in Shirley, the court actually repudiated the exact language that the state court used in this case to deny Mr. Wynn's Batson claim based on speculation about the prosecutor's reasons for denying, for exercising his strikes. Judge Van Dyke, earlier I was stating to you that Williams v. Runnels held that a prima facie showing can be made based on a statistical disparity alone. I pulled up the language about that while I was at counsel table. The court in Williams held at page 1107, quote, we have held that a defendant can make a prima facie showing based on a statistical disparity alone. That is the sort of low burden of proof that we're talking about when we're talking about step one. Yeah, I know. The problem is that, I mean, that obviously could be true in some case if there wasn't. In other words, you could look at the totality of circumstances, and the totality of circumstances could be pretty much the statistical showing. But that doesn't necessarily show that if you have some statistical evidence but you have other evidence that you wouldn't take it all into account in that particular case. So I could, in other words, it's not inconsistent with that statement to say that, well, the totality of circumstances could include more than the statistical evidence. And that's what I'm struggling with. Certainly. And, Your Honor, I'm out of time. You are, but as long as we're asking you questions, it's okay. For purposes of statistical analysis, though, what are the parameters? Let's say there were 1,000 potential jurors and they struck six. Different than 10 jurors and they struck six, right? That's correct, Your Honor. Is there a magic number that gets us over the, if you will, the threshold, the low threshold on step one of Batson? I don't think there is a magic number, Your Honor. I know that this Court has recognized that ratios of 50% in terms of the challenge rate of the minorities in the jury, that has been sufficient to raise a prima facie case. I think that based on the Court's precedent regarding those ratios, this case more than falls within the parameters that this Court has recognized when setting up, when finding a prima facie case. Is it a function of the number of the people who were in the potential veneer pool or is it the percentage of the minority population in the county or what is it? It's based on the percentage in the veneer pool, Your Honor, but it's also based on the percentage of how many strikes, how many of the available strikes the prosecutor used. So in this case, the prosecutor used six out of 13 strikes against Hispanic jurors and I think that is within the parameters this Court has. Perhaps I don't recall this correctly. I thought he had more strikes that he didn't use. That's correct, Your Honor. He had more strikes that he didn't. Like 20 or something like that? 20. That's correct, Your Honor. It's 20. But when we're looking at whether there's a statistical disparity, as this Court did in Turner v. Marshall, we're supposed to look at the number of strikes the prosecutor actually used when we're assessing whether there is a statistical disparity or not. Do either of my colleagues have additional questions? Please. I have one. So this is kind of a threshold question. I was looking back at your opening brief and it's not clear to me, at least on my quick re-looking at it, is your argument that – what is your argument about epidefferences? Is your argument that epidefference applies here but that you win even under – or is your argument that epidefference doesn't apply? On which issue, Your Honor? On the cognizability question or on the inference of discrimination? On the prima facie cases. Yes, on the prima facie cases. Yes. Our argument is that epidefference does apply because there was a state court adjudication on the merits, but that we can satisfy EDPA's deferential standard because as the Court speculates on a prosecutor's reasons for excusing jurors at step one, that is contrary to clearly established Supreme Court precedent. And in fact, and surely the Court repudiated the exact language that the state court used in its decision in this case at 1 ER 109. So are you saying then that if the state, in this case District Court of Appeals, applied the wrong law, then you don't apply EDPA's standards. Is that right? You go de novo? That's one way of phrasing it, Your Honor. I would phrase it slightly differently. I would phrase it in that if the state court applied the wrong legal standard, that satisfies 2254 D1's requirement that the state court decision be contrary to clearly established Supreme Court precedent. May I respond to one last point that Judge Van Dyck? Judge Van Dyck, earlier you mentioned that we're supposed to, that you expressed some uncertainty about whether we should rely solely on a statistical disparity or look at the totality of the circumstances. Your Honor, I think that the best way to interpret the case law that we have is to say that we can look at statistical disparity. We still have to consider the totality of the circumstances, but the Supreme Court's decisions in Johnson and Miller L put a limitation on the circumstances that we can consider because they both hold that we're not allowed to speculate on what the prosecutor's reasons are for excusing certain jurors. And the reason for that is that under Batson, Batson's step one is not supposed to be about speculation. The Supreme Court has said so numerous times. In Johnson, the court held that the Batson framework is designed to produce actual answers and that the inherent uncertainty present in inquiry of the discriminatory purpose counsels against engaging in needless speculation. And so I think that's the best way to read the cases that we have. Okay. Other questions about my colleague? All right. Thank you both very much for your argument. Your Honor, if I might interject, I didn't answer the two-key question. I'm sorry about that. I'm happy to answer it now if the Court has any questions. That's okay. I can intuit what you had in mind. Thank you, Your Honor. Thank you. Very well. The case is submitted.
judges: SMITH, BADE, VANDYKE